# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

LEONARD F.,[1]

     Plaintiff,

vs.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

     Defendant.

:
:
:
:
:
:
:
:
:
:
:
:

Case No. 2:22-cv-04183

District Judge Michael H. Watson
Magistrate Judge Caroline H. Gentry

---

## REPORT AND RECOMMENDATION[2]

---

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in March 2020. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendations within the specified time period.

undersigned Magistrate Judge recommends that the Commissioner's decision be AFFIRMED.

## I.    BACKGROUND

Plaintiff asserts that he has been under a disability since January 1, 2018. At that time, he was thirty-four years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[3] Plaintiff has a "limited education."[4] *See* 20 C.F.R. § 404.1564(b)(3).

The evidence in the Administrative Record ("AR," Doc. No. 8) is summarized in the ALJ's decision ("Decision," Doc. No. 8-2 at PageID 39-61), Plaintiff's Statement of Errors ("SE," Doc. No. 9), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 11), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 12). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any

---

[3] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

[4] The ALJ explained that the record contained "conflicting reports" by Plaintiff about whether he graduated from high school. (Decision, Doc. No. 8-2 at PageID 56.) The ALJ stated that he gave Plaintiff "the benefit of the doubt" and considered Plaintiff to have a limited education. (*Id.*)

substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which

3

the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1:     Plaintiff has not engaged in substantial gainful activity since January 1, 2018, the alleged onset date.

Step 2:     He has the severe impairments of lumbar degenerative disc disease status post lumbar laminectomy, foraminotomy, and discectomy in

4

December 2017; major depressive disorder; generalized anxiety disorder; antisocial personality disorder; and alcohol abuse/dependence.

Step 3:    He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:    His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "frequent right lower extremity controls; frequently climb ramps and stairs; no climbing ladders, ropes, or scaffolds; occasionally stoop; frequently kneel, crouch, crawl; no exposure to workplace hazards such as unprotected heights or dangerous, unprotected moving mechanical parts; individual is limited to perform simple, routine tasks but not at a production rate pace, such as one has with assembly line work; occasional interactions with supervisors, coworkers, and the public; interactions would be superficial meaning interactions would be limited to the straightforward exchange of information, without negotiation, persuasion, or conflict resolution; can tolerate occasional changes in duties and the work setting."

He is unable to perform any of his past relevant work.

Step 5:    Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform.

(Decision, Doc. No. 8-2 at PageID 46-57.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 57.)

## B.    Consultative Psychologist Princess Black, Psy.D.

Dr. Black performed a consultative psychological evaluation on behalf of the Ohio Division of Disability Determination in September 2020. (AR, Doc. No. 8-7 at PageID 564-68.) Dr. Black noted that Plaintiff arrived fifteen minutes early, drove himself to his

5

appointment, and reported no difficulty finding the office. (*Id*. at PageID 564.) She

further reported that Plaintiff wore dirty clothing but that his hygiene was otherwise

unremarkable. (*Id*.) Dr. Black summarized Plaintiff's reported personal background,

including his family and interpersonal history, education, medical and substance-use

history, legal history, work history, behavioral health history, and daily activities. (*Id*. at

PageID 565-66.) She also documented her observations of Plaintiff's mental status and

behavior, noting, *inter alia*, that he was "polite and cooperative throughout the interview"

and exhibited logical, coherent, and organized thoughts with full orientation. (*Id*. at

PageID 566-67.)

According to Dr. Black, Plaintiff presented with a mild impairment in immediate

memory, below-average intellectual functioning, concrete thinking, limited insight, and

deficits in judgment. (AR, Doc. No. 8-7 at PageID 567.) Dr. Black noted that Plaintiff

demonstrated intact attention and concentration, although "he exhibited difficulty

following the flow of the interview and completing forward and backward digit span

exercises." (*Id*. at PageID 567.) She further noted that Plaintiff did not attempt to perform

basic arithmetic and did not complete a serial sevens exercise. (*Id*.) Dr. Black repeated

Plaintiff's statement that he felt "sad, depressed, and anxious" and that he had "smoked a

joint" before the appointment. (*Id*.) According to Dr. Black, Plaintiff exhibited a

depressed mood and tearful affect, but he denied any suicidal ideations or plans. (*Id*.)

In the Functional Assessment section of the report, Dr. Black offered her opinion

that Plaintiff could carry out simple, verbal instructions. (AR, Doc. No. 8-7 at PageID

568.) She explained:

6

> [Plaintiff] presents with an intellectual disability, being unable to read and write. He had mild impairment in immediate memory on the mental status exam. He reported having issues with memory including included losing track of where he is going when driving, frequently misplacing things, forgetting conversations, and always asking family to repeat themselves.

(*Id*.) Dr. Black opined that that Plaintiff was able to complete simple tasks "if set at his own pace." (*Id*.) Dr. Black explained that she based this part of her opinion on her observations that Plaintiff was able to maintain attention and concentration during the evaluation, but that his reports of lack of motivation, difficulty sleeping, racing thoughts, and verbal hallucinations "impede[d] his abilities in these areas." (*Id*.)

When asked to describe Plaintiff's abilities and limitations in responding to supervisors and coworkers, Dr. Black stated:

> [Plaintiff] presented as polite and cooperative throughout the evaluation but has a history of violence including domestic violence, high school fighting, and incarceration for defending himself with a knife injuring two men. He discussed frequently arguing and getting into verbal altercations with his coworkers and supervisors. He is easily agitated and has minimal social interaction.

(AR, Doc. No. 8-7 at PageID 568.)

Finally, in the area of responding appropriately to work pressures, Dr. Black explained:

> [Plaintiff] reported being unable to currently work due back surgery and following depression in 2016. He was in special education classes throughout his schooling and presents with an intellectual disability. He meets criteria for Major Depression, [Generalized Anxiety Disorder], and Antisocial Personality Disorder and has been psychiatrically hospitalized two years ago after a suicide attempt. [Plaintiff] does not manage stress or anger well. He has used substances most of his life to cope with his mental health issues.

(AR, Doc. No. 8-7 at PageID 568.) Dr. Black opined that Plaintiff would "have difficulty responding appropriately to work pressures in a work setting at this time." (*Id*.)

The ALJ characterized Dr. Black's analysis as "less of an actual opinion and . . . more of a mere repetition of [Plaintiff]'s subjective reports, some of which are not supported elsewhere in the record and some [of which] are not consistent with other evidence of [Plaintiff's] functioning." (Decision, Doc. No. 8-2 at PageID 53.) The ALJ therefore found Dr. Black's opinion "largely unpersuasive." (*Id*.) In particular, the ALJ stated that "[w]hile a reduction as to work complexity is supported by the record, [Dr. Black's] evaluation objectively supported no more than mild-moderate deficits in attention, concentration[,] and pace, and does not support the need for [Plaintiff] to set his own pace." (*Id*. at PageID 54.) However, the ALJ also concluded that "a reduction in pace/production is appropriate for moderate deficits in concentrating, persisting and maintaining pace and for moderate deficits in adapting and managing himself."

The ALJ then addressed Dr. Black's evaluation of Plaintiff's social functioning:

> [Plaintiff] was socially appropriate in a new setting with a new doctor, which the psychological examiner notes, but then cites [Plaintiff's] subjective reports of easy agitation and minimal social interaction in support of limitations. While some social interaction limitations are certainly warranted, given findings of some abnormalities on exam, albeit almost more typically with alcohol abuse to the point of intoxication, [Plaintiff] presented here and elsewhere as polite and cooperative.

(Decision, Doc. No. 8-2 at PageID 54.)

Finally, the ALJ addressed Dr. Black's opinion that Plaintiff had "'difficulty responding appropriately to work pressures in a work setting at this time' based on [Plaintiff's] reports of a hospitalization after a suicide attempt." (Decision, Doc. No. 8-2

8

at PageID 54.) The ALJ explained why he also found this portion of Dr. Black's opinion

unpersuasive:

> The record reveals that [Plaintiff] to be [sic] very dangerously intoxicated at
> the time of the 'suicidal' attempt and took more Tramadol than prescribed.
> However, a reduction in the stress of [Plaintiff's] work setting is
> appropriate given the accepted diagnoses and their combined effect on his
> overall functioning. The examiner notes that [Plaintiff] has used substances
> most of his life, and although she repeats his reports that this was the result
> of poor stress and anger management, the mental symptoms described that
> needed 'treating' are not seen elsewhere. The hallucinations described to
> the psychological examiner for disability are supported in the record only
> during active polysubstance abuse. He had alleged hearing the voices of a
> deceased friend and his grandparents and seeing deceased people for the
> last 10 years, none of which are supported by the treatment records outside
> of alcohol withdrawal symptoms (4F).

(*Id.*)

The ALJ concluded that Plaintiff has only moderate deficits in the area of adapting

and managing himself, and stated that he accounted for those deficits in the RFC

"limitations that limit the complexity, pace required, changes and social interaction

required." (Decision, Doc. No. 8-2 at PageID 54.) The ALJ further explained why he did

not adopt the entirety of Dr. Black's opinion:

> [Plaintiff] had many normal findings as to concentration and attention at the
> psychological evaluation and in the record with the exception of
> abnormalities while intoxicated. However, moderate limits in this area are
> covered by limiting the work's complexity and pace. An inability to read
> and write is not supported by the record, nor cognitive deficits beyond
> those objectively supported at the psychological exam, but he was still
> considered as below the high school graduate category. As to limitations
> suggested by the psychological examiner and supported by [Plaintiff's]
> subjective reports despite other contradictory reports to treating providers
> and where objective evidence was lacking or conflicting, the limitations
> were not accepted as persuasive. He was cooperative and polite to the
> psychological examiner but agitated in connection with substance
> abuse/intoxication. [Plaintiff] was able to interact reasonably appropriate at

9

the hearing, apologizing for profanity at times. [Plaintiff's] own reports reveal a history of social functioning issues at times, but also sustained relationships with family and friends. He has been provided with significant social interaction with both the frequency and types of tolerable interaction limited to occasional and superficial with specific types of interaction eliminated. He has had minimal mental health treatment. At the hearing, [Plaintiff] testified that counseling was recommended but he never got there yet.

(*Id.*)

### C.    State Agency Psychological Consultants

State agency psychological consultant Jennifer Swain completed a Disability Determination Explanation form in October 2020.[5] (AR, Doc. No. 8-3 at PageID 90-92, 94-95.) Dr. Swain found moderate impairment in all of the "B Criteria" areas of functioning. (*Id.* at PageID 91.) In the mental RFC section of the form, Dr. Swain opined that Plaintiff could perform simple, routine tasks involving one to three steps. (*Id.* at PageID 94.) She also opined that Plaintiff could perform "short[-]cycle tasks where there are no strict production standards or quotas to be met or fast[-]pace demand" and that can be performed in a setting where "he can work away from others." (*Id.* at PageID 95.) As for social interaction, Dr. Swain opined that Plaintiff could interact with the general public "on occasion but with few, familiar others on a regular basis." (*Id.*) She further opined that Plaintiff was limited to superficial interactions. (*Id.*) In terms of adaptation, Dr. Swain opined:

---

[5] There are no credentials after Jennifer Swain's name, but she listed a Medical Specialty Code of 38, which indicates a specialty in psychology. (AR, Doc. No. 8-3 at PageID 91, 95; *see also* DI 28084.050 Signatures, Dates, Specialty Name and Specialty (Items 25 to 28 and Items 30 to 33), SSA POMS DI 28084.050 (effective Oct. 27, 2015) (last updated Dec. 7, 2018).)

> [Plaintiff] can work within a set routine where major changes are explained in advance and gradually implemented to allow [Plaintiff] time to adjust to the new expectations. [Plaintiff's] ability to handle routine stress and pressure in the work place would be reduced, but adequate to handle tasks without strict time limitations or production standards.

(*Id.*) Robyn Murry-Hoffman, Psy.D., reviewed the updated record at the reconsideration level in January 2021, and essentially adopted Dr. Swain's assessment. (AR, Doc. No. 8-3 at PageID 111-12, 115-17.)

The ALJ concluded that the State agency psychological consultants' assessments were "persuasive in part." (Decision, Doc. No. 8-2 at PageID 54.) The ALJ explained that the assessments were persuasive "as to limiting the complexity of [Plaintiff's] work with some language changes," and that "[t]he record supports [Plaintiff's] ability to perform simple, routine tasks but not at a production rate pace, such as one has with assembly line work." (*Id.* at PageID 54-55.) The ALJ noted that he limited Plaintiff to "occasional changes in duties and the work setting." (*Id.* at PageID 55.)

The ALJ explained that the consultants' opinion regarding social functioning "ignores [Plaintiff's] ability to interact in a polite, calm and appropriate manner while not intoxicated in treatment notes, at the psychological evaluation with an unfamiliar other in a new setting, and at the hearing." (AR, Doc. No. 8-2 at PageID 55.) Nevertheless, the ALJ limited Plaintiff to occasional and superficial interaction with supervisors, coworkers, and the public:

> He did testify as to not liking to be told what to do and he appears confident in his skill set, calling himself essentially a jack*** of all trades (profanity, for which he apologized in advance, removed). He was diagnosed with a personality disorder, and given his testimony and work history, he is best limited to occasional and superficial interaction with supervisors, co-

11

workers, and the general public. Superficial is defined would be limited to the straightforward exchange of information, without negotiation, persuasion, or conflict resolution; thus, this includes interactions that would not be tolerable to [Plaintiff] based on the overall record.

(*Id.*)

The ALJ also explained that he found the consultants' opinions only persuasive in part because they did not account for the entire record, which included Plaintiff's history of long-term employment:

These limitations best reflect his functioning during the periods under consideration with the addition of hearing level evidence and testimony. He has maintained long-term employment in the past despite his impairments, the record contains sufficient mental status exam findings and reports to determine his mental functional abilities at this time, and there is no support for additional or different limitations than those formulated in the final residual functional capacity. Where the State agency psychological consultants' assessments are found unpersuasive for the reasons explained, other limitations were accepted that were better supported and more consistent with the entirety of the records for the two periods.

(Decision, Doc. No. 8-2 at PageID 55.)

## IV.    LAW AND ANALYSIS

Plaintiff asserts that the ALJ erred because he "improperly determined the persuasiveness of medical opinions from the State Agency psychologists and Dr. Black, the psychological consultative examiner." (SE, Doc. No 9 at PageID 578.) For the reasons discussed below, the undersigned Magistrate Judge disagrees. Because the ALJ applied the correct legal standards and his findings are supported by substantial evidence, the undersigned recommends that the District Judge affirm the ALJ's decision. *Blakley*, 581 F.3d at 406.

12

### A.    Applicable Law

Social Security regulations require ALJs to adhere to certain standards when evaluating medical opinions. ALJs must analyze the persuasiveness of "***all*** of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [her] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed his claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

Significantly, because the first two factors—supportability and consistency—are the "most important" ones, the ALJ "***will*** explain" how he or she considered them. 20

13

C.F.R. § 404.1520c(b)(2) (emphasis added).[6] As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

**B.    The ALJ Did Not Reversibly Err When Evaluating The Opinion Of Consultative Psychologist Dr. Black**

Plaintiff's contention that the ALJ improperly evaluated the opinion of consultative psychologist Dr. Black is not well-taken. The undersigned concludes that the ALJ complied with the applicable regulations when he found Dr. Black's opinion largely unpersuasive. Further, his analysis is supported by substantial evidence.

The ALJ noted that the functional assessment portion of Dr. Black's report largely repeated Plaintiff's subjective reports. (Decision, Doc. No. 8-2 at PageID 53.) The ALJ concluded that some of these subjective reports were "not supported elsewhere in the record" and "not consistent with other evidence of [Plaintiff's] functioning." (Decision, Doc. No. 8-2 at PageID 53.) Nevertheless, the ALJ considered Dr. Black's "'opinion' evidence . . . for limitations that can be supported by evidence other than [Plaintiff's] subjective reports that are not entirely consistent with his reports in treatment records."

---

[6] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

14

The ALJ's use of the terms "supported" and "consistent" is not entirely correct. The supportability factor considers only "objective medical evidence and supporting explanations presented by a medical source . . . ." 20 C.F.R. § 404.1520c(c)(1). By contrast, the consistency factor requires a comparison of a medical opinion or prior administrative medical finding with "the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920c(c)(2). The ALJ appears to have conflated these terms. Nevertheless, the Court finds that the ALJ addressed both factors because he considered the objective findings documented by Dr. Black, as well as other medical and non-medical evidence in the record, when analyzing Dr. Black's opinion.

For example, the ALJ addressed both factors when he evaluated Dr. Black's opinion regarding Plaintiff's social functioning. The ALJ addressed the supportability factor when he compared Dr. Black's observation that Plaintiff presented as socially appropriate during the consultative evaluation with Dr. Black's citation to Plaintiff's subjective complaints of "easy agitation and minimal social interaction" and found Dr. Black's social limitations not fully persuasive. The ALJ addressed the consistency factor when he found Dr. Black's social functioning opinion unpersuasive because although some examinations showed social abnormalities, other evidence in the record showed that Plaintiff is polite and cooperative. (Decision, Doc. No. 8-2 at PageID 54.)

Similarly, the ALJ addressed the supportability and consistency factors when he evaluated Dr. Black's opinion that Plaintiff had difficulty responding to work pressures. The ALJ noted that Dr. Black based her opinion on the fact that Plaintiff was hospitalized following a suicide attempt. (Decision, Doc. No. 8-2 at PageID 54.) He discounted Dr.

15

Black's opinion because records from that hospitalization showed Plaintiff had been "dangerously intoxicated . . . and took more Tramadol than prescribed." (Decision, Doc. No. 8-2 at PageID 54.) The ALJ reasoned that certain stress-related limitations were warranted "given the accepted diagnoses" in the record, but noted that Plaintiff's reported hallucinations occurred "only during active polysubstance abuse." (*Id*.) The ALJ also explained that the treatment notes showed that Plaintiff only heard voices and saw deceased people when he experienced alcohol withdrawal symptoms. (*Id*.) The ALJ balanced the evidence and found that Dr. Black's opinion was largely unpersuasive. The ALJ addressed the supportability and consistency of Dr. Black's findings as required by 20 C.F.R. § 404.1520c(b)(2), (c)(1), and (c)(2), and his findings are supported by substantial evidence.

Plaintiff contends that the ALJ erred by discounting Dr. Black's opinion on the basis that it was "less of an actual opinion and more of a mere repetition of [Plaintiff's] subjective reports." (SE, Doc. No. 9 at PageID 585.) Relying on *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989), Plaintiff argues that "a mental health opinion cannot be discounted for reliance on subjective complaints." (SE, Doc. No. 9 at PageID 585-87; *see also* Reply, Doc. No. 12 at PageID 612.) This argument is not well-taken.

In *Blankenship*, the Sixth Circuit held that an ALJ improperly disregarded an examining psychiatrist's opinion where "[t]he claimant presented psychotic complaints that did not agree with the documented clinical findings." 874 F.2d at 1121. The Sixth Circuit acknowledged that "[a] psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing" and that "the diagnostic techniques

16

employed in the field of psychiatry may be somewhat less tangible than those in the field

of medicine." *Id*. (internal quotations and citations omitted). However, the court held that

"the report of a psychiatrist should not be rejected simply because of the relative

imprecision of the psychiatric methodology or the absence of substantial documentation,

***unless there are other reasons to question the diagnostic techniques***." *Id*. (emphasis

added). The ALJ in that case erred because "no medical evidence contradict[ed] [the

psychiatrist's] conclusion" and the examination was in fact "supported by specific and

complete medical findings." *Id*. The Sixth Circuit concluded that there were "no valid

reasons" to question the psychiatrist's conclusions in that case. *Id*.

      The facts here are different. Unlike in *Blankenship*, the ALJ in this case did not

find Dr. Black's opinion unpersuasive because she based it upon Plaintiff's subjective

complaints. (*See* SE, Doc. No. 9 at PageID 586.) Instead, the ALJ noted that many of Dr.

Black's statements in the "Functional Assessment" portion of her report did not qualify

as "opinions" because they constituted "mere repetition of [Plaintiff's] subjective

reports."[7] (Decision, Doc. No. 8-2 at PageID 53.) The ALJ then explained that, even

when applying the rules for evaluating opinion evidence, some of Plaintiff's subjective

statements were not persuasive because they "are not supported elsewhere in the record

and . . . are not consistent with other evidence of [Plaintiff's] functioning." (*Id*.) The

ALJ's analysis of Plaintiff's subjective statements is not inconsistent with *Blankenship*.

---

[7] The regulations define a "medical opinion" as a "statement from a medical source about what [an individual] can still do despite [his] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2).

Nor did the ALJ reject Dr. Black's report "because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation." *Blankenship*, 874 F.2d at 1121. Instead, the ALJ discounted Dr. Black's opinion because it was neither supported by nor consistent with the evidence. For example, the ALJ explained that Dr. Black's reliance on Plaintiff's subjective complaints of being easily agitated and having minimal social interaction was unsupported by Dr. Black's own observation that Plaintiff presented as polite and cooperative during the evaluation. (Decision, Doc. No. 8-2 at PageID 54.) The ALJ further reasoned that the interaction difficulties documented during other examinations correlated with Plaintiff's alcohol abuse and intoxication. (*Id*.) As for Dr. Black's opinion that Plaintiff would have difficulty responding appropriately to work pressures, the ALJ reasoned that Plaintiff's suicide attempt—which Dr. Black cited— occurred when Plaintiff was "very dangerously intoxicated." (*Id*. at PageID 54.) The ALJ also explained that the mental symptoms that Dr. Black described were not documented in the treatment records, other than when Plaintiff was engaged in "active polysubstance abuse." (*Id*.) Thus, there were valid "other reasons to question" Dr. Black's opinion aside from her reliance on Plaintiff's subjective reports. *Blankenship*, 874 F.2d at 1121.

It was also proper for the ALJ to consider the mental status findings in the record, which are objective medical evidence, when analyzing Dr. Black's opinion. 20 C.F.R. § 404.1520c(c)(1) (explaining the supportability factor by stating that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be."). Indeed, *Blankenship* recognized that "[w]hen mental

illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology." 874 F.2d at 1121 (quoting *Poulin*, 817 F.3d at 873-74.)

Asserting that the ALJ relied too heavily on objective findings in the record, Plaintiff argues that the ALJ should have given more weight to Plaintiff's subjective complaints when analyzing Dr. Black's opinion. But the ALJ properly followed the Social Security Administration's two-step process for evaluating an individual's symptoms. SSR 16-3p, 2017 WL 5180304, *3 (revised and republished Oct. 25, 2017).[8] First, the ALJ must determine whether an individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *Id.* Second, the ALJ must evaluate the intensity and persistence of the individual's symptoms and determine the extent to which the individual's symptoms limit his ability to perform work-related activities. *Id.* at *4. The ALJ must examine "the entire case record, including the ***objective medical evidence***; the individual's relevant statements; statements and other information provided by medical sources and others; and any other relevant evidence in the record." *Id.* at *4-5 (emphasis added). Although the ALJ should not rely solely on objective medical evidence to discount subjective complaints, the ALJ should consider objective evidence because it "is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms." *Id*. at *5.

---

[8] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

In this case, the ALJ followed the required steps. The ALJ first determined that Plaintiff has medically determinable impairments (i.e., lumbar degenerative disc disease, major depressive disorder, generalized anxiety disorder, antisocial personality disorder, and alcohol abuse/dependence) that could reasonably cause the type of symptomatology alleged. (Decision, Doc. No. 8-2 at PageID 46, 49.) Next, the ALJ considered the evidence in the record and concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record. (*Id.* at PageID 49.) In making this conclusion, the ALJ appropriately considered the objective medical and other evidence when evaluating the intensity and persistence of Plaintiff's symptoms.

Specifically, the ALJ summarized Plaintiff's allegations and subjective complaints regarding his mental health and provided a detailed summary of Plaintiff's medical records and treatment history. (Decision, Doc. No. 8-2 at PageID 47-48, 52-55.)  The ALJ acknowledged Plaintiff's subjective complaints and abnormal examination findings, including many of those identified in Plaintiff's brief. (*Id.*) The ALJ weighed these abnormal findings against normal findings in the record. (*Id.*) The ALJ also considered Plaintiff's reported activities and compared them to Plaintiff's reported difficulties. (*Id.* at PageID 54.) The ALJ concluded that the balance of the evidence did not support Plaintiff's allegations of symptom severity. (*Id.* at PageID 49, 52-54.) The Court finds the ALJ complied with SSR 16-3p when evaluating Plaintiff's symptom severity and that his conclusions are supported by substantial evidence.

For all these reasons, Plaintiff's assertion that the ALJ erred when analyzing Dr.

Black's opinion is not well-taken.

### C.     The ALJ Did Not Reversibly Err When Evaluating The Findings Of The State Agency Medical Consultants

Plaintiff argues that the ALJ improperly evaluated the state agency psychological

consultants' prior administrative findings. Specifically, Plaintiff contends that the ALJ

"listed the limitations he found persuasive . . . but did not explain or even mention how

these limitations met supportability and consistency as required under § 404.1520c." (SE,

Doc. No. 9 at PageID 581.) Plaintiff argues that the ALJ's "blanket statement" that "there

is no support for additional or different [RFC] limitations" only mentions supportability

and does not address consistency. (*Id*.) These arguments are not well-taken.

The regulations that require ALJs to explain their analysis of the supportability

and consistency factors do not mandate that such explanations include a specific level of

detail. 20 C.F.R. § 404.1520c. Instead, "the appropriate level of articulation will

necessarily depend on the unique circumstances of each claim." Evaluation of Medical

Evidence, 82 Fed. Reg. 5844, 5854 (Jan. 18, 2017).

Here, the undersigned finds that the ALJ adequately explained his consideration of

the supportability and consistency factors. The ALJ reasoned that he adopted several of

the consultants' limitations because they were "better supported and more consistent with

the entirety of the records for the two periods." (Decision, Doc. No. 8-2 at PageID 55.)

The ALJ explained that he found other portions of the consultants' opinion to be

unpersuasive, and provided several reasons that addressed supportability and consistency.

(*Id*.) For example, the ALJ explained that he discounted the consultants' opinion regarding Plaintiff's social functioning because it "ignores [Plaintiff's] ability to interact in a polite, calm and appropriate manner while not intoxicated in treatment notes, at the psychological evaluation with an unfamiliar other in a new setting, and at the hearing." (*Id*.) The ALJ cited Plaintiff's personality disorder diagnosis, testimony, and work history to explain why he limited Plaintiff to superficial and occasional interactions with supervisors, coworkers, and the public. (*Id*.) The ALJ also explained that the limitations he adopted accounted for hearing-level evidence and Plaintiff's testimony, which the consultants did not have the opportunity to review. (*Id*.) The ALJ's analysis complied with the applicable regulations and his findings are supported by substantial evidence.

Plaintiff argues that the ALJ erred by omitting from the RFC the consultants' opinion that Plaintiff was limited to simple, verbal instructions, needed to work away from others and be only around a few familiar others, and required major changes to be explained in advance and gradually implemented. (SE, Doc. No. 9 at PageID 581; Reply, Doc. No. 11 at PageID 611.) But because the ALJ found that the consultants' opinion was not fully persuasive, he was not required to adopt their recommended limitations. (*See* Decision, Doc. No. 8-2 at PageID 54-55.) Moreover, even when an ALJ gives great weight to an opinion—which did not happen here—"there is no requirement that an ALJ adopt a state agency psychologist's opinion verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015).

Notably, the ALJ discussed Plaintiff's social functioning and adaptation deficits elsewhere in the decision and explained why he included certain social and adaptation limitations in the RFC. For example, the ALJ found at Step Three that Plaintiff has moderate limitation in the "Paragraph B" areas of interacting with others and adapting or managing oneself. (Decision, Doc. No. 8-2 at PageID 47.) The ALJ acknowledged Plaintiff's subjective complaints about difficulty getting along with others, as well as handling job stress and changes. (*Id*. at PageID 47-48.) The ALJ cited to medical records that showed abnormalities such as argumentative and inappropriate behavior when Plaintiff was intoxicated. (*Id*. at PageID 48.) The ALJ balanced this evidence with medical records that documented Plaintiff's abilities in these areas, such as having friends, being able to work with treating providers, and understanding treatment recommendations. (*Id*.) The ALJ also cited normal mental status findings that included calm and polite behavior when he was not intoxicated, as well as the ability to maintain attention and concentration with only a mild impairment in memory. (*Id*.)

Additionally, the ALJ provided a detailed summary of Plaintiff's medical records and mental health treatment history—including his alcohol dependence—in the RFC analysis. (AR, Doc. No. 8-2 at PageID 50-54.) Here, the ALJ discussed Plaintiff's subjective complaints of anxiety, depression, social isolation, alcohol abuse, auditory hallucinations, and forgetfulness. (*Id*.) He also discussed Plaintiff's daily activities, including Plaintiff's complaints of difficulties with several activities and his tendency to isolate from others, as well as Plaintiff's references to having friends and doing some household chores. (*Id*.) The ALJ acknowledged several abnormal objective examination

23

findings including a depressed mood, tearful affect, decreased cooperativeness, and a mild impairment in immediate memory. (*Id*.) The ALJ compared these findings to other examinations that showed a normal mood and affect, calm and cooperative behavior, normal speech and thought processes, and normal attention and concentration. (*Id*.) The ALJ found that on balance, the evidence did not support Plaintiff's allegations of symptom severity. (Decision, Doc. No. 49-55.) He concluded that to account for Plaintiff's mental impairments, the RFC should limit Plaintiff to carrying out simple, routine tasks involving occasional and superficial social interactions. (*Id*. at PageID 49, 53-55.) This conclusion is supported by substantial evidence.

Further, although the ALJ did not specifically address the consultants' opinion that major changes should be explained in advance and gradually implemented (AR, Doc. No. 8-3 at PageID 95, 117), he did address their broader opinion about Plaintiff's adaptation limitations. (Decision, Doc. No. 8-2 at PageID 55.) Specifically, the ALJ explained that limitations for "pace/production . . . and changes in work duties and duties [sic] and work setting" would account for Plaintiff's need to work in a low-stress setting with limited complexity. (*Id*.) The ALJ supported this conclusion by citing to Plaintiff's employment history, mental status examination findings, and hearing testimony. (*Id*.) The ALJ accounted for Plaintiff's deficits in adapting and managing himself by limiting Plaintiff to tasks that do not involve a production rate pace and only occasional changes in duties and the work setting. (*Id*.) The ALJ's explanation of these issues is sufficient to satisfy the applicable regulations and his conclusions are supported by substantial evidence.

Plaintiff further argues that the ALJ "improperly defined superficial in such a way as to make it ineffective, not based on substantial evidence, and contrary to the Agency's definition."[9] (SE, Doc. No. 9 at PageID 583.) Plaintiff cites to a Remand Order issued by the Social Security Administration Appeals Council in a different case, which stated: "[S]uperficial is 'understood and applicable to a work setting, as it speaks to the depth, kind and quality of social interactions, and indicates that the claimant could not have sustained more than shallow or cursory interactions with others, i.e., coworkers, the general public, and/or supervisors.'" (SE, Doc. No. 9 at PageID 583) (citing "Remand Order," Doc. No. 9-1 at PageID 591-92).)

There is no basis for concluding that the Remand Order's definition of the term "superficial" is "the Agency's definition," as Plaintiff contends. The Remand Order does not cite any regulatory authority for this definition. (Remand Order, Doc. No. 9-1 at PageID 591-92.) There is no indication that the state agency consultants adopted this definition (or any definition) of the term "superficial." (AR, Doc. No. 8-3 at PageID 94-95, 115-17.) Even if the ALJ was aware of the definition in this Remand Order, Plaintiff cites no authority to support his contention that the ALJ was required to adopt it. (*See* SE, Doc. No. 9 at PageID 583-84.) Also, the ALJ's definition of "superficial" is consistent with the definition in the Remand Order. (*Compare* Decision, Doc. No. 8-2 at PageID 49, *with* Remand Order, Doc. No. 9-1 at PageID 592.)

---

[9] The ALJ defined "superficial" interactions in the RFC: "interactions would be limited to the straightforward exchange of information, without negotiation, persuasion, or conflict resolution . . . ." (Decision, Doc. No. 8-2 at PageID 49.)

The fact that the ALJ did not adopt a definition found in a Remand Order from an entirely different case—one that is not mandated by Social Security regulations or Sixth Circuit case law—is not an error. "The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. § 404.1546(c)). The ALJ's decision to limit Plaintiff to superficial social interactions, which the ALJ defined as "limited to the straightforward exchange of information, without negotiation, persuasion, or conflict resolution," was within the ALJ's discretion.

## V.    CONCLUSION

In sum, the undersigned Magistrate Judge finds that the ALJ complied with the applicable regulations and his conclusions are supported by substantial evidence. Accordingly, the ALJ's decision should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT**:

1.    Plaintiff's Statement of Errors (Doc. No. 9) be OVERRULED;

2.    The Court AFFIRM the Commissioner's non-disability determination; and

3.    The case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).